STAMP–AD, INC., Appellant,

v.

BARTON RABEN, INC., Appellee.

No. 01–95–00567–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 29, 1996.

Ronald J. Restrepo, Teresa R. Jones, Houston, for appellant.

C. Michael Black, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This appeal arises from a contract dispute. It involves sufficiency of the evidence to support jury findings, and the trial court's rulings on motions for judgment notwithstanding the verdict. We affirm in part and reverse and render in part.

This breach of contract action involves two "executive search" contracts between the executive search company, Barton Raben, Inc., and its client, Stamp–Ad, Inc. Barton Raben sued Stamp–Ad for failure to pay Barton Raben for executive searches performed. Stamp–Ad responded that Barton Raben failed to perform the services required by the contracts.

Stamp–Ad is a firm that runs promotions with retail grocery chains. Barton Raben is a management consulting firm specializing in the identification and selection of key personnel for client companies. The parties had been doing business with each other since April 1989. On March 19, 1990, Barton Raben submitted an engagement letter to Stamp–Ad pertaining to Barton Raben's agreement to locate a candidate to fill the position of Vice President of Product Development for Stamp–Ad. This was the second of such engagement letters between Barton Raben and Stamp–Ad. The first letter is not a subject of this lawsuit. The March 19 engagement letter specified Barton Raben's fees for the search and required that Stamp–Ad pay Barton Raben a $36,000 estimated professional fee in three installments upon commencement of the search. Upon placement of a candidate, the estimated professional fee would be adjusted based on 30% of the candidate's actual first-year compensation. Stamp–Ad paid the $36,000 fee and all out-of-pocket expenses as billed.

The engagement letter also provided a one-year employment guarantee which obligated Barton Raben to replace the candidate at no charge, other than for out-of-pocket expenses, if the candidate left Stamp–Ad's employment of his own accord, or was terminated due to his own fault, during the first year.

Barton Raben identified Don Davidson as a possible candidate for Vice President of Product Development. Davidson was not interested in the position and the search was closed sometime between June 1990 and September 1990. In January 1991, Stamp–Ad retained Barton Raben to locate a Vice President of Sales for Stamp–Ad, a different open position. In the meantime, Stamp–Ad began

negotiating directly with Don Davidson in December 1990 or January 1991 for the Vice President of Product Development position, and hired Davidson effective April 1, 1991. Barton Raben submitted a final adjusted bill on July 9, 1991 for the gross amount claimed to be due for the Vice President of Product Development search, $39,000 ($250,000 first-year compensation × 30% = $75,000 − $36,000 paid in three installments = $39,000).

As early as July 18, 1991, Stamp–Ad began experiencing problems with Davidson's placement. Davidson did not perform as promised for Stamp–Ad, and it is uncontested that due to his own fault, Davidson was terminated on October 31, 1991. Therefore, based on the engagement letter, Barton Raben was required to find a suitable replacement for Davidson; however, Barton Raben did not extend efforts to find a replacement for Davidson. Barton Raben asserted that Stamp–Ad had not paid a number of invoices sent by Barton Raben, and therefore, the contract was in breach.

Barton Raben sued Stamp–Ad for breach of contract, and sought recovery of the full $39,000 payable under the executive search contract for the position of Vice President of Product Development, as well as sums payable under outstanding invoices related to the other executive search agreement regarding the Vice President of Sales position at Stamp–Ad.

Stamp Ad filed an answer asserting as defenses:

(1) Barton Raben's breach of the search contract regarding the Vice President of Product Development position, in that (a) Barton Raben had not performed under its replacement guarantee, (b) Barton Raben had sought the additional fee before the one-year employment date of Don Davidson, contrary to the agreement of the parties, and (c) Barton Raben was seeking more than it was entitled to under the agreement;

(2) Failure of consideration and non-performance by Barton Raben of the search contract regarding the Vice President of Sales position; and

(3) Barton Raben's failure to mitigate damages with regard to the Vice President of Sales search agreement.

Additionally, Stamp–Ad counterclaimed, asserting that in January 1991, it had retained Barton Raben to assist it in locating a Vice President of Sales for Stamp–Ad, and that Barton Raben failed to comply with that agreement. Stamp–Ad had paid Barton Raben $30,000 in fees, plus out-of-pocket expenses, in connection with that separate agreement, and Stamp–Ad sought return of the fees paid.

The jury found that Stamp–Ad failed to comply with the agreement regarding the search for Vice President of Product Development, and awarded Barton Raben $39,000 in compensatory damages and $36,942.37 in attorney's fees.

The jury further found that Barton Raben failed to comply with the agreement for the search for Vice President of Sales, and awarded Stamp–Ad $24,856.68 in compensatory damages and $36,942.37 in attorney's fees.

After considering both parties' motions for judgment notwithstanding the verdict, the trial court entered its final judgment which awarded Barton Raben $39,000, prejudgment interest, and $36,942.37 in attorney's fees, and awarded Stamp–Ad $24,856.68, plus prejudgment interest, but reduced Stamp–Ad's attorney's fees to $12,000.

In its first point of error, Stamp–Ad asserts that the trial court erred in denying Stamp–Ad's motion for judgment notwithstanding the verdict and motion for new trial because there is "no evidence" or "insufficient evidence" to support the jury's finding that Barton Raben suffered $39,000 in damages for Stamp–Ad's breach of the executive search contract covering the Vice President of Product Development position. Stamp–Ad asserts that the appropriate measure of damages is a calculation of "lost profits net of savings", and Barton Raben failed to prove its damages. We disagree.

■ In a breach of contract action, the measure of damages is just compensation for the loss or damage actually sustained. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Turner v. PV Intern. Corp.*, 765 S.W.2d 455, 465 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex.1989). Here, Barton Raben seeks breach of contract damages for Stamp–Ad's failure to pay the remaining amount owed on the Vice President of Product Development executive search contract. The agreed professional fee, $36,000, that was paid by Stamp–Ad was the search fee. The additional $39,000 that is in dispute became due only if Barton Raben placed an employee with Stamp–Ad.

Barton Raben recommended Don Davidson to Stamp–Ad as a candidate for Vice President of Product Development, and Stamp–Ad hired Davidson at a $250,000 yearly salary. At that point, Stamp–Ad became obligated to make up the $39,000 difference between 30% of Davidson's $250,000 first-year salary and the $36,000 professional fee already paid. This obligation had no condition precedent.

Barton Raben pled that "Stamp–Ad's failure to pay Barton Raben the agreed upon amount for services rendered constitutes breach of contract and [Barton Raben] sues for ... actual damages."

The jury was asked the following questions:

### Question No. 1

Did Stamp–Ad fail to comply with the agreement regarding the search for a Vice–President/Product Development?

\* \* \* \* \* \*

ANSWER: *Yes*

### Question No. 2

What additional sum of money, if any, paid now in cash, would fairly and reasonably compensate Barton Raben for Stamp–Ad's failure to comply with the agreement regarding the search for a Vice–President/Product Development?

ANSWER: *$39,000.00*

■ Stamp–Ad did not object to jury questions one and two or to the lack of instructions on a lost profits measure of damages. Any complaint about the form of submission or the failure to instruct is therefore waived. *See Allen v. Am. Nat'l Ins. Co.*, 380 S.W.2d 604, 608 (Tex.1964); *Johnson v. State Farm Mut. Auto. Ins.*, 762 S.W.2d 267, 270 (Tex.App.—San Antonio 1988, writ denied); Tex.R.Civ.P. 274, 278, 279.

■ In reviewing a "no evidence" point, the court considers only the evidence and inferences that tend to support the finding, and disregards all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992); *Responsive Terminal Systems, Inc. v. Boy Scouts of America.*, 774 S.W.2d 666, 668 (Tex.1989). Testimony of both parties and the engagement letter supports the conclusion that, once Davidson was hired, Stamp–Ad owed Barton Raben an additional $39,000, and Stamp–Ad failed to pay that amount.

■ In reviewing an insufficiency of the evidence challenge, the court of appeals must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). Having done so, the court should set aside the verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (*per curiam* ).

■ The testimony presented at trial supported the claim that Stamp–Ad became obligated to pay Barton Raben $39,000 on the contract for Vice–President of Product Development at the moment Barton Raben filled the position. The engagement letter introduced at trial supported that testimony.

The evidence contrary to the verdict was from Stamp–Ad witnesses who testified that

they did not want to pay Barton Raben the $39,000 professional fee because they did not know if Don Davidson's employment was going to work out. This testimony is not enough to overcome the contract language and the testimony by both parties' witnesses and find that the verdict is clearly wrong and manifestly unjust.

Since there is sufficient evidence in the record from which the jury could have properly calculated Barton Raben's breach of contract damages on the second search contract, Stamp–Ad was not entitled to a judgment notwithstanding the verdict or a new trial on these grounds.

We overrule point of error one.

In its second point of error, Stamp–Ad asserts the trial court erred in awarding Barton Raben attorney's fees because Barton Raben was not entitled to actual damages. We disagree.

■■■■ Attorney's fees are recoverable only if the claimant finally obtains judgment. *Rocha v. Merritt*, 734 S.W.2d 147, 148 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Siegler v. Williams*, 658 S.W.2d 236, 240 (Tex.App.—Houston [1st Dist.] 1983, no writ). As discussed above, Barton Raben proved actual damages and was entitled to the damage judgment. Therefore, Barton Raben can recover attorney's fees.

We overrule point of error two.

In its third point of error, Stamp–Ad asserts the trial court erred in granting Barton Raben's motion for judgment notwithstanding the verdict and reducing Stamp–Ad's jury awarded attorney's fees from $36,942.37 to $12,000. Stamp–Ad claims that the evidence was sufficient to support the jury award. We agree.

Barton Raben filed suit to recover amounts allegedly due under two engagement agreements that overlapped with each other. In addition to asserting affirmative defenses of failure of consideration, non-performance and breach, Stamp–Ad counter-claimed seeking reimbursement of sums it had paid Barton

Raben under one of the engagement agreements, plus attorneys' fees. The jury found that, for legal services in the preparation and trial of the case Stamp–Ad incurred reasonable attorney fees in the amount of $36,942.37.

Barton Raben filed a motion for judgment notwithstanding the verdict requesting that the court disregard the jury's $36,942.37 attorney fees finding because no evidence existed to support the jury's answer, and the evidence established the fact to the contrary as a matter of law. In its motion, Barton Raben argued that uncontroverted testimony was given by Stamp–Ad's attorney that $12,000 was the amount requested for attorney fees in this matter, and that there is no other evidence in the record to support the $36,942.37 attorney fees award.

The trial court granted Barton Raben's motion, and in its final judgment awarded Stamp–Ad a reduced amount of attorney fees, $12,000.

■■■■ The determination of reasonable attorney fees is a question for the trier of fact. *Mack v. Moore*, 669 S.W.2d 415, 420 (Tex. App.—Houston [1st Dist.] 1984, no writ). The trier of fact can consider the nature and complexity of the case, the amount in controversy, the amount of time and effort required, and the expertise of counsel in arriving at a reasonable amount as attorney fees. *Id.* at 419, 420.

■■■■ In order to show the reasonableness and necessity of attorney fees, the party seeking attorney fees is required to show that the fees were incurred while suing the party sought to be charged with the fees on a claim which allows recovery of such fees. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex.1991). A party seeking attorney fees has a duty to segregate nonrecoverable fees from recoverable fees and to segregate the fees owed by different parties. *See id.,* at 11.

■■■■ A recognized exception to the duty to segregate arises when the attorney

fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Sterling,* 822 S.W.2d at 11. When causes of action involved in a suit are dependent upon the same set of facts or circumstances and thus are "intertwined to the point of being inseparable," the party suing for attorney fees may recover the entire amount covering all claims. *Id.*

At trial, Barton Raben's attorney testified as to his experience, qualifications, and his familiarity with the fees attorneys charge for similar services. In August 1991, he agreed to charge Barton Raben $150 per hour for his professional services and $35 per hour for his assistants and paralegals. Based on his professional judgment and experience these are reasonable hourly fees. He introduced his time records through March 1994 to show that $28,942.37 in time was logged for professional services and expenses incurred in representing Barton Raben. In his professional opinion, he estimated that $8,000 would reasonably compensate him for his services since March 1994. He testified that, in total, $36,942.37 is a reasonable fee for the services he performed for Barton Raben in the claims against Stamp–Ad.

On cross-examination, Barton Raben's attorney testified that he did not separate out the fees applicable to Barton Raben's original breach of contract claim and Stamp–Ad's counterclaim because

> it's extremely difficult to differentiate any of the time between the first and second project.

> I have been able to establish that approximately $2,750 in time was spent on the second project that would probably not have been spent on the first, that is to say in the prosecution of the claim on the second as opposed to the first.

> The counterclaim was filed after the case was originally filed, and there was no way at that time to go back and differentiate beginning at that point in time what amounts would be spent in prosecuting the case versus defending the case.

At trial, Stamp–Ad's attorney testified as to his legal background, his knowledge of the community standards regarding attorney's fees, his typical hourly rate, and the amount of time spent on the case. He requested that the jury award him an hourly rate lower than his standard rate but commensurate with that of Barton Raben's counsel. He testified that if "the jury finds that the three components [of the trial] are so interwoven they can't be separated out, in that event Mr. Black is right that the three taken together, the reasonable attorney fees would be $36,-000 [sic]."

 In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it must determine that there is no evidence upon which the jury could have made the findings relied upon. *Mancorp v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). In reviewing the grant of a motion for judgment notwithstanding the verdict, the reviewing court must determine whether there is any evidence upon which the jury could have made the finding. The record is reviewed in the light most favorable to the finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding. *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of competent evidence to support the jury's findings, then the judgment notwithstanding the verdict will be reversed. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

 The evidence presented by the attorneys for both sides constitutes more than a scintilla of evidence for the jury to find that the claims were so intertwined that they were inseparable, and for the jury to award Stamp–Ad $36,942.37 in attorney fees. Therefore, the trial court erred in entering the judgment notwithstanding the verdict that reduced Stamp–Ad's attorney fees to $12,000 from the jury awarded amount of $36,942.37.

We sustain Stamp–Ad's third point of error.

We affirm the portion of the judgment in favor of Barton Raben, and we reverse the judgment to render attorneys' fees through trial for Stamp–Ad against Barton Raben in the amount of $36,942.37 as found by the jury.

MIRABAL, J., dissenting.

MIRABAL, Justice, dissenting.

I dissent. I do not agree that Stamp–Ad had the burden to prove the amount of costs saved by Barton Raben as a result of Barton Raben's non-performance under its one-year employment guaranty. Further, I do not agree that Stamp–Ad had the burden to object, or to request a different jury question, regarding Barton Raben's damage issue. In my opinion, Barton Raben had the burden to plead, the burden of proof, and the burden to request the proper jury question on the issue of its damages.

Stamp–Ad specifically raised the issue regarding the appropriate measure of damages recoverable by Barton Raben when it filed its answer asserting that (1) Barton Raben had not performed under its replacement guarantee, (2) Barton Raben had sought the additional fee before the one-year employment date of Don Davidson, contrary to the agreement of the parties, and (3) Barton Raben was seeking more than it was entitled to under the agreement.

In its first point of error, Stamp–Ad asserts there is legally insufficient evidence to support the jury's finding that Barton Raben suffered $39,000 in damages for Stamp–Ad's breach of the executive search contract covering the Vice President of Product Development position. Stamp–Ad asserts that the appropriate measure of damages is a calculation of "lost profits net of savings", and Barton Raben failed to prove its damages. Stamp–Ad argues that Barton Raben is not entitled to recover the gross amount of $39,000 because such a recovery would place Barton Raben in a better financial position than it would have occupied had both parties fully performed the contract. I agree.

The purpose of damages is to place the injured party in as good a position as it would enjoy if the other party had fully performed under the contract. *Lakewood Pipe v. Conveying Techniques,* 814 S.W.2d 553, 555 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Stewart & Stevenson Serv., Inc. v. Enserve, Inc.,* 719 S.W.2d 337, 343, (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) The measure of damages for breach of a service contract is the profit that the service provider would have earned had he been permitted to complete the contract. *Gunter Hotel, Inc. v. Buck,* 775 S.W.2d 689, 697 (Tex.App.—San Antonio 1989, writ denied); *Harlingen Indep. Sch. Dist. v. C.H. Page & Bros.,* 48 S.W.2d 983, 985 (Tex. Comm'n App.1932, holding approved). The appropriate measure of damages is the difference between the contract price of the services and the expenses that would have been incurred in rendering the services. *Id.*

In *Harlingen Indep. Sch. Dist.,* the court held that the appropriate measure of damages for a breach of contract for architects' services is the profit the architects would have made if allowed to complete the contract. 48 S.W.2d at 985. The lost profits method of computing damages for breach of contract announced in *Harlingen Indep. Sch. Dist.* has been followed in numerous subsequent decisions. *See Wynnewood Dev. Co. v. Belmares,* 295 S.W.2d 441 (Tex.App.—Eastland 1956, no writ) (the proper measure of damages for the breach of contract is the net profits appellee would have made had the contract been carried out); *Comeaux v. Mann,* 244 S.W.2d 274, 276 (Tex.Civ.App.—Austin 1951, writ dism'd) (contractor was entitled to recover the difference between the contract price and the expenses he would have incurred in completing the contract, less the amounts he had been paid).

Here, Barton Raben seeks breach of contract damages for Stamp–Ad's failure to pay the remaining amount owed on the Vice President of Product Development executive search contract. The agreed professional fee, $36,000, that was paid by Stamp–Ad was the search fee. The additional $39,000 that

is in dispute became due only if Barton Raben placed an employee with Stamp–Ad. Once an individual was placed with Stamp–Ad, Barton Raben had an additional obligation under the agreement to replace the individual if he left within one year of his own accord or because of his own fault.

Barton Raben recommended Don Davidson to Stamp–Ad as a candidate for Vice President of Product Development, and Stamp–Ad hired Davidson at a $250,000 yearly salary. At that point, Stamp–Ad became obligated to make up the $39,000 difference between 30% of Davidson's $250,000 first-year salary and the $36,000 professional fee already paid. However, at that point Barton Raben also became obligated to replace Davidson if he left within one year of his own accord or due to his own fault.

The jury was asked the following questions:

### Question No. 1

Did Stamp–Ad fail to comply with the agreement regarding the search for a Vice–President/Product Development?

\* \* \* \* \* \*

ANSWER: *Yes*

### Question No. 2

What additional sum of money, if any, paid now in cash, would fairly and reasonably compensate Barton Raben for Stamp–Ad's failure to comply with the agreement regarding the search for a Vice–President/Product Development?

\* \* \* \* \* \*

ANSWER: *$39,000.00*

In a reviewing a "no evidence" point, the reviewing court considers only the evidence and inferences that tend to support the finding, and disregards all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of America,* 774 S.W.2d 666, 668 (Tex.1989). If the evidence conclusively establishes a proposition contrary to the jury finding, a "matter of law" point of error will be sustained. *Meyerland Community Improvement Ass'n v. Temple* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

The evidence supports the conclusion that, once Davidson was hired, Stamp–Ad owed Barton Raben an additional $39,000, and Stamp–Ad failed to pay that amount. However, as a matter of law, the loss or damage Barton Raben *actually sustained* from the Stamp–Ad's breach was $39,000 *less the expense Barton Raben would have incurred in searching for a replacement for Davidson.* The evidence is uncontroverted that *much* time and effort is required to be expended in order to locate a qualified candidate for an executive position such as Vice President of Product Development. However, there is no evidence of the expense value to be attributed to such time and effort.

The plaintiff has the burden of proving with some degree of certainty a factual basis to support the amount of damages awarded. *Lakewood Pipe,* 814 S.W.2d at 556; *McCarley v. Hopkins,* 687 S.W.2d 510, 513 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Mangham v. Hall,* 564 S.W.2d 465, 469 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Barton Raben had the burden to prove each element of recoverable damages. *See Lakewood Pipe,* 814 S.W.2d at 556; *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Stamp–Ad filed a motion for judgment notwithstanding the verdict requesting that "the Court disregard the jury's answer to Question No. 2, because Barton Raben as a matter of law failed to establish a critical element of the proper measure of its damages, and enter judgment in Stamp–Ad's favor based upon the jury's other answers."

Because there is no evidence in the record from which the jury could have determined the expenses Barton Raben saved by not completing performance of the second search contract, the jury could not calculate the net

profit lost by Barton Raben on the search contract. Accordingly, Stamp–Ad was entitled to the requested judgment notwithstanding the verdict.

I would sustain point of error one.

In its second point of error, Stamp–Ad asserts the trial court erred in awarding Barton Raben attorney's fees because Barton Raben was not entitled to actual damages. I agree.

Attorney's fees are recoverable only if the claimant finally obtains judgment. *Rocha v. Merritt,* 734 S.W.2d 147, 148 (Tex.App.— Houston [1st Dist.] 1987, no writ); *Siegler v. Williams,* 658 S.W.2d 236, 240 (Tex.App.— Houston [1st Dist.] 1983, no writ). As discussed above, Barton Raben did not prove all of the elements of its actual damages and is not entitled to a damage judgment. Therefore, Barton Raben cannot recover attorney's fees.

I would sustain point of error two.

I agree with the majority's disposition of point of error three.

I would reverse the portion of the judgment in favor of Barton Raben and render judgment that Barton Raben take nothing against Stamp–Ad. In all other respects, I agree with the majority.