MEMORANDUM OPINION


No. 04-05-00836-CV

HICKS OIL & BUTANE COMPANY,

Appellant

v.


George GARZA,

Appellee

From the 229th Judicial District Court, Duval County, Texas

Trial Court No. DC-00-198

Honorable Alex W. Gabert, Judge Presiding



Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Alma L. López, Chief Justice

 Catherine Stone , Justice

 Sandee Bryan Marion, Justice 



Delivered and Filed: August 9, 2006



AFFIRMED IN PART, REVERSED AND RENDERED IN PART



 In the underlying litigation, George Garza sued Hicks Oil & Butane Company ("Hicks") for

fraud in the course of entering into an agreement for the purchase of gasoline. Hicks counter-claimed for breach of contract
and conversion. The jury found Hicks committed fraud and awarded Garza $42,000 for lost profits, lost business, and lost
goodwill. The jury also found that Garza breached his contract with Hicks and awarded Hicks $5,300. Hicks filed a motion
for judgment notwithstanding the verdict, which the trial court denied. The trial court entered judgment in favor of Garza,
awarding him $42,700 including pre-judgment interest, less the $5,300 awarded to Hicks, totaling $54,374.29. Also, the
court awarded Garza attorney's fees in the amount of $25,000 and Hicks attorney's fees in the amount of $13,000. Hicks
complains of the judgment in six issues on appeal. We affirm in part and reverse and render in part.

BACKGROUND

 Hicks is a distributor of gas to retail stores. Garza leased a convenience store that sold consumer goods and gas from
Beatrice Gutierrez. While Ms. Gutierrez operated the store, she entered into a contract with Hicks to provide her gas. 
Hicks entered into a lease agreement with Ms. Gutierrez for the placement of Hicks' gas storage tanks, pumps, canopy, and
console. In May 1997, Garza and his wife, Edna Garza, took over the pre-existing lease of the store from Ms. Gutierrez and
signed a new agreement proposed by Hicks' general manager, Ramiro Garcia, to provide Conoco gas to the store. 

 Under the new agreement, Hicks provided gas to Garza on consignment, Hicks received payment for the gas it provided,
and Garza received a commission on the sale. Garza complained several times to Hicks that the pumps were not
functioning properly and his gas prices were not competitive. In May 2000, Garza became upset that Hicks would not
return his calls and that the gas prices set by Hicks were approximately $0.17 above Garza's competition. Garza withheld
the money he owed Hicks for the gas Hicks previously provided. Also, Garza took control over the tanks and pumps, sold
the remaining amount of Hicks' gas, and put another distributer's gas in the tanks. The underlying lawsuit ensued. 

SUFFICIENCY OF THE EVIDENCE

 In its second issue, Hicks asserts the evidence is legally and factually insufficient to support the award of damages to
Garza. Also, in its fifth issue, Hicks contends the trial court erred in "failing to set aside the jury's verdict as to the damages
awarded to Hicks [because] Hicks proved such damages [and] they were uncontested." We review the sufficiency of the
evidence under well-established standards of review. See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005);Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 

1. Garza's Damages

 "Lost profits are damages for the loss of net income to a business measured by reasonable certainty." Miga v. Jensen, 96
S.W.3d 207, 213 (Tex. 2002). Such loss cannot be left to speculation. See Wade v. Southwestern Bell Tel. Co., 352 S.W.2d
460, 462 (Tex. Civ. App.--Austin 1961, no writ). Hicks contends there is no evidence or insufficient evidence to support
Garza's claim of lost profits, loss of business, and loss of goodwill. 

 Ramiro Garcia admitted that high gas prices, leaking pump hoses, and long pump time create loss of goodwill. Garcia also
testified that if the prices at Garza's station were competitive he could sell between five and six thousand gallons per week,
instead of the four thousand he was currently selling. This increase in gas sales would profit Garza approximately $1500 a
month, which would also increase the sales inside the store. On the other hand, Garza testified that if he had properly
functioning pumps and competitive prices, he could have sold between eight and ten thousand gallons per week, which
would realize a profit of between $1600 and $2000 per month. 

 However, when asked if he had anything in writing or any documents to support how much money he thought he had lost,
Garza replied, "Well it's quite substantial, but I don't have anything to prove it." When asked if he had any previous sales
history to prove how much he had lost, he replied that he did not. Mrs. Garza testified that on average every person who
came into the store spent between $15 and $20, which meant a profit of $7 for the store. She also testified that during the
hours she worked she witnessed approximately ten customers every day come to the store to get gas and "just give up and
drive away." During closing arguments, the Garzas' attorney told the jury, "Well, we're always a little stumped here. In a
personal injury case where someone is seriously injured, there's no equation that allows you to measure out so many dollars
and cents against so many ounces or minutes or hours of pain and suffering or permanent injury. And, in this case that's
something that you are going to have to determine."

 A plaintiff need not provide "exact calculations" to recover for lost profits. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486,
504 (Tex. 2001). "However, the injured party must do more than show that it suffered some lost profits." Id. "At a
minimum, opinions or lost-profit estimates must be based on objective facts, figures, or data from which the lost-profits
amount may be ascertained." Id. Here, although there is evidence in the record that the Garzas may have suffered a loss of
business and good will, the Garzas presented no "objective facts, figures, or data" from which the jury could ascertain lost
net profits. The evidence before the jury was speculation on the part of Mr. and Mrs. Garza regarding how much more gas
and store products they might have sold had the pumps been new and the pricing competitive. Accordingly, we hold the
evidence is legally insufficient to support the jury's award of damages to Garza.

2. Hicks' Damages

 Hicks claims the trial court erred in failing to set aside the jury's verdict because Hicks proved its damages, the damages
were uncontested, and the jury's award was against the great weight and preponderance of the evidence. 

 The jury awarded Hicks $5,300 in damages on its breach of contract claim, but Hicks contends it should have been
awarded $10,278.87. Garza admitted in May 2000 he did not pay Hicks for its share of gas sales, which amounted to
approximately $4,200. A letter entered into evidence stated that Garza owed Hicks $4,278.87. Garcia testified that Garza
owed Hicks an additional $6,000 for taxes, fee requirements, and insurance for the tanks. However, in Garza's deposition,
which was read at trial, he discussed owing Duval County, not Hicks, $6,000 for taxes. Garza stated that Hicks was going
to pay those taxes for him in exchange for Hicks "deed[ing] over the pumps and tank and console...to Mr. Garza." Garza
never received the deed to the pumps, tank, or console. 

 Although there is a discrepancy as to whom Garza owed the $6,000, it is for the trier of fact, not this court, to resolve
conflicts or inconsistencies. Perseus, Inc. v. Canody, 995 S.W.2d 202, 205 (Tex. App.--San Antonio 1999, no pet.). 
Accordingly, we hold the evidence is factually sufficient to support the award of damages to Hicks. 



GARZA'S ATTORNEY'S FEES

 In its third issue, Hicks asserts the trial court erred in awarding Garza attorney's fees. Hicks contends Garza is not entitled
to attorney's fees because he presented his case as a common law fraud claim. Attorney's fees are not recoverable unless
such a recovery is provided by statute or a contract between the parties. Travelers Indem. Co. v. Mayfield, 923 S.W.2d 590,
593 (Tex. 1996). Generally, attorney's fees are recoverable under a breach of contract action, but not under a negligence or
common law fraud claim. See Parkway Co. v. Woodruff, 901 S.W.2d 434, 441 n.9 (Tex. 1995); Wilson & Wilson Tax
Servs., Inc. v. Mohammed, 131 S.W.3d 231, 236 n.7 (Tex. App.--Houston [14th Dist.] 2004, no pet.). 

 In his petition, Garza claimed that "the acts and/or omissions of the Defendants were negligent [and] fraudulent [and] have
been the proximate and/or producing cause of [Garza's] damages...." The charge of the court contained only a question
regarding whether Hicks committed fraud against Garza, and did not contain a question of whether Hicks breached its
contract with Garza. Because Garza only pled and received damages from his common law fraud claim, he is not entitled to
attorney's fees on such claim.

HICKS' ATTORNEY'S FEES

 In its sixth issue, Hicks complains the trial court erred in "failing to award all of the attorney's fees proven by Hicks" on its
breach of contract action. We review the trial court's award of attorney's fees under an abuse of discretion standard. Stable
Energy, L.P. v. Newberry, 999 S.W.2d 538, 556 (Tex. App.--Austin 1999, pet. denied). A trial court abuses its discretion
when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 

 Hicks complains it is entitled to the full amount of its attorney's fees because they were "proven and submitted." Hicks'
counsel provided an affidavit that calculated her reasonable attorney's fees to be $20,139.50 for services rendered to Hicks. 
Hicks' counsel attributed $18,000 of that amount to pursue Hicks' breach of contract action. However, the trial court
awarded Hicks $13,000. 

 Hicks' counsel stated in her affidavit that she had twelve years experience as an attorney and that her firm's attorneys spent
182.90 hours working on the case and the firm's paralegal spent 10.9 hours, with hourly rates of $110 per hour for partners,
$95 per hour for associates, and $55 per hour for paralegals. Hicks' counsel also stated that reasonable attorney's fees in
Duval County are $150 per hour, and $18,000 is reasonable and necessary attorney's fees to pursue a breach of contract
claim against Garza. 

 In determining the reasonable amount of attorney's fees, the trial judge, as the trier of fact, may consider the nature and
complexity of the case, the amount in controversy, the amount of time and effort required, and the expertise of counsel in
arriving at a reasonable amount of attorney's fees. Stamp-Ad, Inc. v. Barton Raben, Inc., 915 S.W.2d 932, 937 (Tex.
App.--Houston [1st Dist.] 1996, no writ). Judicial knowledge of the usual and customary fees constitutes some evidence on
which an award of attorney's fees may be based. Ho v. Wolfe, 688 S.W.2d 693, 697 (Tex. App.--Amarillo 1985, no writ). 

 The trial court did not state its basis for its reduction of the fees awarded to Hicks and Hicks did not request findings of fact
and conclusions of law. Further, a trial court has the discretion to fix the amount of attorney's fees. World Help v. Leisure
Lifestyles, Inc., 977 S.W.2d 662, 683 (Tex. App.-- Fort Worth 1998, pet. denied). A trial court "is not mandated to award
attorney's fees equal to those testified to at trial," even when that testimony is uncontroverted. Nat'l Mar-Kit, Inc. v.
Forrest, 687 S.W.2d 457, 460 (Tex. App.--Houston [14th Dist.] 1985, no writ); see also Inwood North Homeowners' Ass'n,
Inc. v. Wilkes, 813 S.W.2d 156, 157-58 (Tex. App.--Houston [14th Dist.] 1991, no writ) (affirming award of $500 in
attorney's fees to plaintiff who presented undisputed evidence of approximately $1,500 in attorney's fees). Therefore, we
hold the trial court did not act arbitrarily, unreasonably, or without reference to guiding rules or principles.

CONCLUSION

 We reverse that portion of the trial court's judgment awarding Garza recovery against Hicks and render judgment that
Garza take nothing on his claims against Hicks. (1) The remainder of the trial court's judgment is affirmed. 



 Sandee Bryan Marion, Justice

 

1. In its first issue, Hicks asserts the evidence is legally and factually insufficient to support the finding of fraud. Because
we render a take-nothing judgment against Garza, we do not reach the merits of this issue. Cf. Cortez ex rel. Estate of
Puentes v. HCCI-San Antonio, Inc., 131 S.W.3d 113, 123 (Tex. App.--San Antonio 2004) (a "none" answer on the damages
issue renders the liability issue immaterial), aff'd, 159 S.W.3d 87 (Tex. 2005). In its fourth issue, Hicks asserts the trial
court erred in awarding Garza pre-judgment interest. Because we render a take-nothing judgment against Garza, we do not
reach the merits of this issue.