GUNTER HOTEL OF SAN ANTONIO INC., Individually and as Managing Partner of Gunter Hotel Assoc., A Partnership, Appellant,

v.

Robert V. BUCK, Individually and d/b/a Robert V. Buck & Associates–Architects, Appellee.

No. 04–87–00402–CV.

Court of Appeals of Texas, San Antonio.

June 28, 1989.

Rehearing Denied Aug. 18, 1989.

Donald S. Bayne, Henry W. Christopher, Jr., Johnson & Christopher, Inc., San Antonio, for appellant.

Charles B. Gorham, Jo Chris G. Lopez, Shaddox, Compere, Gorham & Good, San Antonio, for appellee.

Before BUTTS, BIERY and CARR, JJ.

## OPINION

CARR, Justice.

This is a construction contract case. The appellant (Hotel) filed suit seeking a declaratory judgment that appellee (Buck) had been fully paid under its interpretation of the contract, and asserting causes of action for breach of contract and negligence. Buck counterclaimed for alleged fees due under the contract calculated on a percentage basis on the planned future additions and for lost profits.

The record reflects that in the spring of 1981, the Hotel employed Buck by written contract as the project architect for the Hotel. The contract covered renovation and new construction. Three projects were involved, the renovation of the Hotel itself, the construction of a new structure adjacent to the Hotel, which the parties generally called the "Travis Tower," and a structure connecting the Hotel and the Travis Tower, which the parties called the "forty-foot addition."

It is undisputed that the terms of the written contract are contained in three documents consisting of:

(1) a letter agreement dated May 7, 1981;

(2) Standard Form of Agreement Between Owner and Architect. AIA Document B141 (for a definition of phases as referred to in the letter agreement); and

(3) a letter of agreement dated April 16, 1982, modifying the May 7, 1981 agreement.

Under the terms of the initial May 1981 contract, Buck was to be compensated by receiving a percentage of the construction costs for each of the projects, receiving 7% for the renovation and 5.75% for new construction. (In the April 16, 1982 letter, Buck subsequently agreed "since the scope of the Travis Tower has been greatly increased" to 4.25% of architectural fees for new construction of the Travis Tower.) The contract also provided that "the work will be billed at the hourly rate during the schematic phase until a budget is established."

Buck was fully paid on his work on the renovation project for which no claim is sought.

Following trial, the jury found that Buck was entitled to a percentage fee for both the Tower and the forty-foot addition, that Buck had substantially performed, that the Hotel had illegally terminated Buck, that Buck was entitled to percentage fees of $121,281.00 for the Tower and $38,036.00 for the addition, plus lost profits of $100,000.00 and $40,000.00 in attorneys' fees. The Hotel was denied its claim for engineering fees. The trial court disregarded the award of lost profits on the Hotel's motion but otherwise entered judgment on the verdict. This appeal followed.

Appellant has raised several points of error challenging the legal and factual sufficiency of the evidence to support jury's answers to special issues. Our standard of review applicable to each legal and factual insufficiency point of error is well settled.

A legal sufficiency point challenges the lack of competent evidence on some vital finding made by the trial court. "No evidence" points may only be sustained when the record discloses one of the following situations:

(a) a complete absence of evidence of a vital fact;

(b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;

(c) the evidence offered to prove a vital fact is no more than a mere scintilla;

(d) the evidence establishes conclusively the opposite of the vital fact.

*Aetna Insurance Company v. Klein,* 160 Tex. 61, 325 S.W.2d 376 (1959). When reviewing a "no evidence" challenge, this Court should consider only the evidence and reasonable inferences drawn from the evidence which support the jury verdict. *Stafford v. Stafford,* 726 S.W.2d 14 (Tex. 1987). The Court must disregard all evidence and inferences to the contrary. *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex.1986) If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *See Stafford,* 726 S.W.2d at 16. If the evidence furnishes some reasonable ba-

sis for differing conclusions by reasonable minds as to the existence of the vital fact, it amounts to more than a scintilla of evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

Factual sufficiency points, on the other hand, maintain that the evidence is factually insufficient to support a finding of a vital fact or the finding of the vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). In reviewing a factual insufficiency challenge, the Court must first examine all of the evidence, and having considered and weighed all of the evidence, the Court may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). An appellate court cannot pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

In the first and second points of error, appellant alleged that the evidence was legally and factually insufficient to support the jury's answer to Special Issue No. 1, wherein the jury found that all conditions of the contract were satisfied entitling Buck to a percentage fee for his services attributable to the schematic phase of the new tower.

The central issue in appellant's first two points of error is the method by which Buck is entitled to calculate his contract compensation for his work on the proposed new construction of the Travis Tower. The Hotel contends that he is limited to an hourly fee because no budget was "established" within the meaning of the contract. Buck contends that he may calculate his fee as a percentage of the construction costs because he has completely complied with his contract architectural "duties" and "responsibilities" pertaining to his architectural services to be rendered in the schematic phase of the proposed new tower as set out in the contract.

Both parties agree that the issue is governed by the contract which clearly indicates the intention of the parties, that Buck is to be compensated on a percentage of the total construction cost basis when a budget is established. The term "budget is established" is not defined in the contract.

Buck testified that Article 1 of the AIA document defined specifically the duties of the architect during the schematic design phase and that he had rendered all architectural services required therein. That document provides in Article 1.1 the requirements of the schematic design phase.

1.1 SCHEMATIC DESIGN PHASE

1.1.1 The Architect shall review the program furnished by the Owner to ascertain the requirements of the Project and shall review the understanding of such requirements with the Owner.

1.1.2 The Architect shall provide a preliminary evaluation of the program and the Project budget requirements, each in terms of the other, subject to the limitations set forth in Subparagraph 3.2.1.[1]

1.1.3 The Architect shall review with the Owner alternative approaches to design and construction of the Project.

1.1.4 Based on the mutually agreed upon program and Project budget requirements, the Architect shall prepare, for approval by the Owner, Schematic Design Documents consisting of draw-

---

1. 3.2 **RESPONSIBILITY FOR CONSTRUCTION COST**

**3.2.1** Evaluations of the Owner's Project budget, Statements of Probable Construction Cost and Detailed Estimates of Construction Cost, if any, prepared by the Architect represent the Architect's best judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Architect cannot and does not warrant or represent that bids of negotiated prices will not vary from the Project budget proposed, established or approved by the Owner, if any, or from any Statement of Probable Construction Cost or other cost estimate or evaluation prepared by the Architect.

ings and other documents illustrating the scale and relationship of Project components.

1.1.5 The Architect shall submit to the Owner a Statement of Probable Construction Cost based on current area, volume or other unit costs.

In addition, the record shows that Buck did (in connection with the Schematic Phase) prepare and submit a detailed May 1982 budget for the "Travis Tower" project to the Hotel of probable construction cost for the "shell" and "finish out" totaling $19,024,449 as evidenced by Defendant's Exhibit No. 46.

Buck's schematic design drawings (plans) of the new tower were introduced as exhibits. An expert witness for Buck, testified that Buck's Schematic Design drawings "met the standards in Bexar County, Texas, for the completion of the schematic phase of the duties required by an architect in connection with a construction of a structure."

Architect William Von Rosonberg, the Hotel's expert witness, testified that in his opinion Buck's tower drawings were not complete as to the schematic phase.

Josef Seiterle, president of the Hotel, testified that in his opinion Buck had not complied with AIA document in terms of "Budget Established":

Q. Let's go on now and talk about this meaning of, budget established. The contract refers to a budget being established, is that right?

A. Yes.

Q. And no where in the contract does it say that the Gunter Hotel has to approve the budget, all it states that the budget is establish?

A. It's an interpretation of the term, budget established. It doesn't say budget submitted, it says budget established. That can only be established by two parties if both parties agree.

Q. It's a fact, isn't it, that a budget submitted by an architect to an owner only has the construction costs, isn't that a fact?

A. It depends on what—I mean for me to establish a budget, I cannot just get the construction cost, I have all the other costs. I have to get the financing and the architectural fees and have to pay many other costs, so to me a budget is a total commitment to work, I mean where you established a total budget. I mean it is not just construction costs, that is only one factor. . . .

Q. If you chose not to get that financing, if you chose not to approve that budget for whatever reason, it's your position that you didn't have to pay Mr. Buck?

A. These are according to contract, yes.

There was obviously a difference in interpretation between the parties as to what "budget established" means and the evidence was conflicting. Buck's interpretation being a schematic phase budget of probable construction cost as required by the AIA document pertaining to architectural duties and the Hotel's interpretation being a total budget of the total cost of the project, some of which cost Buck would not have control over.

This was a question for the jury who answered in Buck's favor. Where the evidence is conflicting, the reviewing court is bound by the findings of the trier of fact. *Carroll Instrument Co., Inc. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654 (Tex.App.—Houston [1st Dist.] 1984, no writ).

■ We conclude that the evidence in the record is sufficient for the jury to have found in Special Issue No. 1 that a Schematic Phase Budget was established to qualify Buck for a percentage payment of probable construction cost.

Appellant's points of error one and two are overruled.

In the third and fourth points of error appellant alleges that the evidence was legally and factually insufficient to support the jury's answer to Special Issue No. 5, wherein the jury found that the Hotel was obligated to pay Buck $121,281 as a percentage fee for the schematic design of the new tower. The Hotel argues again that

no budget was established to trigger or calculate a finding in the amount of $121,281.

We conclude that the evidence is sufficient for the jury to have found in Special Issue No. 5 that the Hotel was obligated to pay Buck $121,281 for the schematic design of the new tower. Buck, by the terms of the contract, was responsible for preparing probable construction cost for the new tower which he submitted to the Hotel in May 1982. The probable construction cost was $19,024,449 and it was this cost that determined the amount of fee. Having answered Special Issue No. 1 in Buck's favor, the jury, in applying the contract percentage architectural fee and schematic phase percent against the probable construction cost, had sufficient evidence to arrive at its answer to Special Issue No. 5. Appellant's third and fourth points of error are overruled.

In the fifth and sixth points of error, appellant alleges that the evidence was legally and factually insufficient to support the jury's answer to Special Issue No. 6, wherein the jury found that the Hotel was obligated to pay Buck $38,036 for the schematic design and design/development of the forty-foot addition.

■ Appellant has challenged the jury's answer to Special Issue No. 6 on the grounds that Buck was required to offset his fee for the forty-foot extension by amounts that the Hotel claims were previously paid. It is well established Texas law that a plea of payment is an affirmative defense to a contract action and that a party claiming a right to an offset has the obligation of pleading and proving his or her entitlement and of requesting a jury issue on that point. *Burrus Mills, Inc. v. Hein*, 399 S.W.2d 950 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.); *Jefferson Standard Life Ins. Co. v. Lindsey*, 94 S.W.2d 549 (Tex.Civ.App.—Eastland 1936, writ dism'd). This appellant failed to do.

Appellant's fifth and sixth points of error are overruled.

In the ninth point of error, appellant alleges that the evidence established conclusively, as a matter of law, that Buck owes $32,718.81 to the Hotel for services rendered by Willard E. Simpson Engineering, Inc.

The record reflects that Buck stopped making payments to Simpson after May 11, 1983, although Simpson continued to bill for services rendered. On January 12, 1984, Simpson demanded payment for all outstanding bills, which totaled $32,718.81, and Buck refused to pay same claiming the number of hours spent was "unreasonably high" and, therefore, the fee itself was unreasonably high. The Hotel paid it and received an assignment of Simpson's claim against Buck.

Special Issue No. 7 inquired:

Find from a preponderance of the evidence what sum of money, if any, is owed by ROBERT V. BUCK & ASSOCIATES to THE GUNTER HOTEL OF SAN ANTONIO, INC. for services rendered by Willard E. Simpson Engineering, Inc.?

Answer in dollars and cents, if any.

In response to Special Issue No. 7 the jury found that Buck owed nothing to the Gunter Hotel.

It is undisputed that, under the terms of the contract, Buck was obligated to pay for the engineering services on all projects out of his fee and that the contract specified that the firm of Willard E. Simpson Engineering, Inc., would act as the structural engineer.

■ During the evidentiary phase of trial, Buck's sole position was his challenge of the reasonableness of Simpson's bill. Buck's objection during the charge phase to submission of Special Issue No. 7 on the ground that Buck did not have the right to challenge the Simpson bill did not amount to a judicial admission in light of his trial position and all other testimony adduced on the subject. Since the Simpson bill was to be paid out of Buck's fee, we hold that Buck had an inherent contractual right to challenge the "reasonableness" of the Simpson bill and Buck is therefore not liable for the same as a matter of law.

Appellant's point of error nine is overruled.

In his tenth point of error, appellant alleges that the overwhelming weight and preponderance of the evidence established that Buck is indebted to the Hotel in some amount for services rendered by Willard E. Simpson Engineering, Inc., and the Jury's failure to so find in response to Special Issue No. 7 was so against the great weight and preponderance of the evidence as to be manifestly unjust.

Buck's evidence of unreasonableness can be summarized as follows:

1. The bill for fire stair number 3 was 18.4% of the structural cost, while fire stars number 1 and 2 were only 3.9%.
2. The bill for the forty-foot extension was 8.3% of the structural cost, while Buck felt an appropriate fee would be only 3.9%.
3. The bill for attending meetings should be disallowed entirely because Buck had not billed for attending the same meetings.

Simpson and his employee, Lewis Laird, a civil engineer, testified on behalf of the Hotel. Both testified that the Simpson bill was reasonable in light of design changes for Fire Stair No. 3, complexity of the design for the forty-foot extension, and the production advice and consultation with the owner and Buck at the meetings.

■ The reasonableness of the Simpson bill was disputed by the evidence and was a question for the jury. We find that the jury's answer to Special Issue No. 7 cannot be deemed manifestly unjust in view of the disputed evidence before it.

Appellant's point of error ten is overruled.

In view of our overruling appellant's points of error nine and ten, appellant's point of error fourteen concerning attorney's fees is overruled as appellant is not a prevailing party.

In his points of error eleven and twelve, appellant alleges that Buck was not entitled to recovery of attorney's fees.

The only argument appellant has made under points of error eleven and twelve is that if this Court reversed the judgment of the trial court, the Court must also reverse the award of attorneys' fees.

■ In the instant case, the award of attorneys' fees is legally premised on Chapter 38 of the TEX.CIV.PRAC. & REM. CODE ANN. (Vernon 1987), formerly TEX. REV.CIV.STAT.ANN. art. 2226 (Vernon 1966). A suit by an architect for services rendered under a written contract of employment are among those "personal services" for which a recovery of attorney's fees is authorized. *See Beller v. DeLara,* 565 S.W.2d 319, 322 (Tex.Civ.App.—San Antonio 1978, no writ). *Brown v. Cox,* 459 S.W.2d 471, 474 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). The evidence established that Buck presented his claim by letter dated August 3, 1983, in accordance with § 38.002 of the Civil Practice and Remedies Code and that he has incurred reasonable and necessary attorneys' fees. As the prevailing party at trial, Buck is entitled to an award of reasonable attorneys' fees in this case.

Appellant's points of error eleven and twelve are overruled.

## CROSSPOINTS

Buck's counterclaim sought to recover "lost profits." He obtained jury findings that he substantially performed his contract (Special Issue No. 3), that the Hotel wrongfully terminated its agreement (Special Issue No. 4), and that his lost profits amounted to $100,000 (Special Issue No. 8). The trial court granted the Hotel's motion for judgment non obstante veredicto on the lost profits issue. Nonetheless, the Hotel raised points of error 7, 8, and 13 to preserve its right to attack the jury findings on appeal on the grounds of factually and legally insufficiency of the evidence.

Buck has raised four cross-points, in which he asserts the Hotel wrongfully terminated its agreement and the trial court erred in failing to award lost profit damages. There are four paragraphs in the contract dealing with the subject of termi-

nation and the proper measure of compensation on termination:

This Agreement may be terminated by either party upon seven (7) days written notice should the other party fail substantially to perform in accordance with its terms through no fault of the party initiating the termination.

This Agreement may be terminated by the Owner upon at least seven (7) days written notice to the Architect, the Architect shall be compensated for all services performed to the termination date.

In the event the Agreement is terminated because of the Architect's failure to perform in accordance with the terms of the Agreement, the Architect shall not be entitled to receive any compensation for services rendered during the phase in which such termination occurred.

The Hotel argues that it had the right, under the contract, to abandon the project and to terminate the agreement, and therefore the agreement could not have been "wrongfully" terminated as a matter of law. Further, it is the Hotel's contention that the above referenced paragraphs of the contract provide unambiguously that the Owner, the Hotel, may terminate the contract with or without fault on the behalf of Buck. If Buck is at fault, he is not compensated for the services performed during the phase in which termination occurs; if he is not at fault, then he is fully compensated for his services to the termination date. Either way, however, the Hotel argues that it has the right to terminate as a matter of law, and therefore, could not have terminated the contract unlawfully.

The Hotel further contends that the termination paragraphs must also be read in conjunction with the following paragraph, which appears earlier in the contract:

It is further understood that any area not designed or engineered by my [Buck's] firm would not be included in the tabulation of the architectural/engineering fee.

Therefore, the Hotel argues that, construed as a whole, the contract clearly contemplates that architectural services could be rendered by another architect other than Buck, for which Buck would receive no compensation.

■ We disagree with appellant's arguments and hold that the Hotel did not have an absolute right of termination but rather had a right of termination upon condition, to-wit: "Should the other party (Buck) fail substantially to perform in accordance with its terms through no fault of the party initiating the termination 'or' in the event that the project is permanently abandoned."

It is clear from the record that Buck's termination was upon the first condition. The Hotel's January 12, 1984, letter of termination through its attorney to Buck's attorney reads in part as follows:

January 12, 1984

Mr. Charles R. Shaddox
Attorney at Law
The North Frost Center
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209

Re: Cause No. 83CI–20512

Gunter Hotel of San Antonio, Inc., Individually and as Managing Partner of Gunter Hotel Associates, a Partnership vs. Robert V. Buck, Individually and d/b/a Robert V. Buck & Associates–Architects

Dear Charlie:

I was advised by my client, Gunter Hotel San Antonio, Inc., that your client, Robert V. Buck and Associates caused one of its representatives to be present at a construction meeting at the Gunter Hotel on Monday, January 9, 1984.

As is pointed out in the Plaintiff's Original petition that has been filed in the above captioned matter, Gunter Hotel San Antonio, Inc. has found it necessary to obtain other architectural services to complete the project. It was under the impression that the language of the Petition would indicate to Robert V. Buck & Associates that the agreement under which Robert V. Buck & Associates was providing architectural services to Gunter Hotel San Antonio, Inc. was terminated. *Termination has occurred for the*

*reasons outlined in the Petition.* (emphasis added)

I am writing this letter to reiterate to you, as attorney for Robert V. Buck & Associates, that the Agreement for Robert V. Buck & Associates to provide architectural services to Gunter Hotel San Antonio, Inc. is terminated and no further services should be performed by your client....

In light of the present posture of the matter, I presume that no direct notification from the owner to the architect would be appropriate. However, I would appreciate it if you would confirm that you have received this letter and have provided a copy of it to your client.

The Hotel's original petition was filed on December 28, 1983 and reads in part as follows:

## IV.

During the course of the performance of architectural services that he was obligated to perform for the Plaintiff in connection with the renovation of the Gunter Hotel, the Defendant breached the terms of his contract and failed to properly perform many of the duties that he was obligated to perform as an architect.

■ We hold that the Hotel is now bound by the substance of its Petition and letter (notice) of termination that Buck was terminated because he allegedly failed to substantially perform. This the jury found against the Hotel. An improper termination of a contract is a breach of contract as a matter of law.

■ Because the jury found the Hotel unlawfully terminated its agreement with Buck, the submission of an issue on lost profits was proper. It is a long standing rule in Texas that the measure of damages for breach of an architectural services contract is the profit that the architect would have earned had he been permitted to complete the contract. *Harlingen I.S.C. v. C.H. Page & Brothers,* 48 S.W.2d 983, 985 (Tex.Comm'n App. Sec. A. 1932, holding approved). *See, Kleiner v. Eubank,* 358 S.W.2d 902, 905 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.); *Harlingen I.S.D. v. C.H. Page & Brothers, supra.* Assuming the validity of the contract, the correct measure of damages is the difference between the contract price of the architect's services and the expense he would have incurred in rendering the services. *Harlingen I.S.D., Id.*

The lost profits method of computing damages for breach of contract announced in *Harlingen I.S.D.* has been followed in numerous subsequent decisions. *See,* for example, *Comeaux v. Mann,* 244 S.W.2d 274, 276 (Tex.Civ.App.—Austin 1951, writ dism'd) (Contractor was entitled to recover the difference between the contract price and the expenses he would have incurred in completing the contract and less the amounts he had been paid.); *Wynnewood Development Co. v. Belmares,* 295 S.W.2d 441 (Tex.Civ.App.—Eastland 1956, no writ) ("It is settled law that the proper measure of damages for the breach of contract, such as we have here, is the net profits Appellee would have made had the contract been carried out.").

■ In order to prove his lost profits, Buck both testified and introduced Defendant's Exhibit 74 as evidence of the net profits he would have earned had he been permitted to complete the architectural services. The evidence offered by Buck would have supported a jury finding of $147,513. The Hotel offered no controverting evidence on the issue of Buck's lost profits. The jury, after considering this evidence, awarded Buck the sum of $100,000 for these lost profits. This amount was less than the amount requested by Buck and was fully supported by the evidence.

Appellant's points of error seven, eight and thirteen are overruled and Buck's cross-points one through four are sustained.

Buck's cross-point five claims that the trial court erred in failing to award Buck prejudgment interest on the amount awarded by the jury in response to Special Issue No. 8, because as a matter of law, Buck is entitled to prejudgment interest on this amount.

**698**

In this case, the contract made no provision for the computation of damages upon breach by the Hotel. Because net profits is an unliquidated amount not provided for by the contract, Buck is entitled to prejudgment interest on the sum of $100,000, at the rate of 10% per annum compounded daily commencing six months from and after January 12, 1984, the date the Hotel unlawfully breached its agreement with Buck. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985); *Acco Constructors v. National Steel Products*, 733 S.W.2d 368 (Tex.App.—Houston [14th Dist.] 1987, no writ); and *Perry Roofing Co. v. Olcott*, 722 S.W.2d 538 (Tex.App.—Fort Worth 1986, writ granted). As pointed out in *Olcott*, Buck's entitlement to prejudgment interest at the 10% rate prescribed by *Cavnar* rather than the 6% rate of TEX.REV.CIV.STAT.ANN. art. 5069–1.03 is predicated on the fact that damages are unliquidated.

Buck's cross-point five is sustained.

Accordingly, for the reasons state herein, we:

(1) Affirm the judgment of the trial court that Buck recover from the Gunter Hotel of San Antonio, Inc. and Gunter Hotel Associates:

(a) the sum of $121,281 with interest thereon at the rate of 6% per annum commencing on the thirtieth day from and after August 10, 1983, to the date of this judgment pursuant to TEX.REV.CIV. STAT.ANN. art. 5069–1.03;

(b) the sum of $38,036 with interest thereon at the rate of 6% per annum commencing on the thirtieth day from and after February 10, 1987, to the date of this judgment, pursuant to TEX.REV.CIV. STAT.ANN. art. 5069–1.03.

(c) the sum of $40,000 as attorneys' fees; and

(d) all costs of suit, and

(2) Reverse the judgment of the trial court and render judgment in appellee's favor for $100,000 plus prejudgment interest at the rate of 10% compounded daily commencing six months from and after January 12, 1984.