**PINNACLE ANESTHESIA CONSULTANTS, P.A.,**
**Appellant,**

v.

**Dr. Neal FISHER, Appellee.**

No. 05–07–01042–CV.

Court of Appeals of Texas,
Dallas.

June 25, 2009.

Rehearing Overruled May 10, 2010.

P. Michael Jung, Strasburger & Price, L.L.P., Mark A. Stinnett and Michael A. Yanof, Stinnett, Thiebaud & Remington, L.L.P., Dallas, TX, for Appellant.

Martin E. Rose, Rose Walker, L.L.P., Michael D Richardson, Steven Dominic Sanfelippo, F. Leighton Durham, Kirk L. Pittard, Durham & Pittard, LLP, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and FRANCIS.

## OPINION

Opinion By Justice MOSELEY.

Dr. Neal Fisher's employment agreement with Pinnacle Anesthesia Consultants, P.A. provided that he could be terminated for "cause," which was defined in the agreement as any of sixteen different reasons. Fisher sued Pinnacle, alleging (among other things): breach of contract based on its termination of the employment agreement without cause; slander; and conversion. The principal dispute between the parties is whether Pinnacle terminated Fisher without cause.

The trial court granted partial summary judgment for Fisher on his breach of contract claim, deciding that he had conclusively negated thirteen of the termination-for-cause grounds stated in the agreement. A jury found in favor of Fisher on the other three termination-for-cause grounds; it also found for Fisher on his slander and conversion claims. The trial court rendered a final judgment in favor of Fisher.

Pinnacle appeals, asserting the trial court erred in granting partial summary judgment and complaining of certain trial rulings. For the reasons below, we reject Pinnacle's arguments, resolve its issues against it, and affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fisher is a board-certified anesthesiologist. In 1990, he joined Dallas Anesthesia Associates, a group of anesthesiologists that provided obstetric anesthesia services at Presbyterian Hospital in Dallas. In 1999, the successor to Dallas Anesthesia Associates merged with Pinnacle, a group of anesthesiologists practicing in North Texas. Pinnacle continued to provide obstetric anesthesia services to Presbyterian. Fisher signed an employment agreement with Pinnacle and thereby became its employee and a member of its Dallas Division.

### A. The Employment Agreement

Pursuant to the agreement, Fisher agreed to provide anesthesiology services exclusively to Pinnacle's patients on a full-time basis at certain locations. His duties as a physician included performing both anesthesiology services and administrative duties and following Pinnacle's professional standards of quality and its practice protocols and policies. The agreement provided that it was automatically renewed for one-year terms "unless terminated in accordance with the terms of this Agreement." Section 4.2(a) of the agreement, entitled "Termination For Cause," provided that, upon an affirmative vote of certain

percentages of Pinnacle's outstanding shareholders and of Pinnacle's directors in attendance at a meeting at which a quorum was present, Pinnacle could terminate the agreement "immediately for cause." Section 4.2(a) also contained fourteen subsections, which defined "cause" to mean any of sixteen different reasons.[1] These subsections will be discussed in more detail herein.

The agreement also contained an article (Article VI) entitled "Noncompetition"; section 7.1 of this article states "Left Intentionally Blank." The remainder of the article does not include a non-competition agreement, and there is no dispute that Fisher was not subject to such an agreement.

### B. The Meeting

On January 10, 2004, Fisher was informed that a meeting of Pinnacle's Dallas Division would be held on January 22. Fisher was told he and his attorney could attend the meeting, but he was not told the meeting's subject. Some portions of the meeting were "closed door" as to Fisher and his attorney; however, Fisher recorded those portions of the meeting he was permitted to attend, apparently with the knowledge of those participating. A transcript of that recording was submitted as evidence during the summary judgment proceedings and was also admitted into evidence at trial.

Early portions of the meeting, which were recorded and which included all shareholders of the Dallas Division, its attorneys, and Fisher and his attorney, involved allegations of several clinical and

---

1. Unless specified, all references to "subsections" refer to subsections of section 4.2(a). These subsections defining "cause" are numbered (i) through (xiv); the agreement refers to them as "subsections," as do we. However, our discussion acknowledges that subsections (iv) and (viii) each contains two separate grounds for termination. For clarity, our discussion of subsections (iv) and (viii) include bracketed numbers delineating the two separate grounds for termination set forth in each of those subsections.

administrative incidents concerning Fisher. Fisher defended himself, stating that the incidents had been reviewed by the hospital, were untrue, or were just allegations with no documentation. He stated his belief that he was being targeted for termination by the Dallas Division's management because he had questioned what he perceived as Pinnacle's business plan of billing as many procedures as possible out-of-network in order to increase Pinnacle's profits.

Fisher was asked to agree to submit to Pinnacle's peer review process, which would have included, among other things, a psychiatric evaluation and a blood test for drugs. Fisher volunteered to take any type of drug test ("a hair sample, urine, blood, everything . . ."), but refused to submit voluntarily to Pinnacle's peer review process, stating that he believed such a peer review would be a "kangaroo court."

During a final portion of the meeting (also recorded), Fisher was told he had to agree to five conditions to remain in Pinnacle: (1) submit to Pinnacle's peer review process for clinical incidents; (2) agree to a two-year probation for administrative matters; (3) sign a three-year non-compete agreement; (4) withdraw from another physician group; and (5) agree to pay Pinnacle's attorney's fees and expenses in connection with the January 22 meeting. These were described as "the tickets for him to get back in and really integrate." Fisher was told that if he chose not to agree to the conditions, he must leave Pinnacle. He was given a deadline of 5:00 p.m. the following day to respond, but Fisher stated immediately that he would not agree to the conditions. (No evidence was admitted at trial or in connection with the earlier partial summary judgment hearing contradicting these statements.)

After the next day's deadline, Pinnacle wrote Fisher that it was proceeding to terminate him for cause under the agreement. It also withheld fees due to Fisher in order to reimburse itself for its attorney's fees incurred in connection with the January 22 meeting.

## C. The Lawsuit

Fisher sued Pinnacle, alleging breach of contract (for terminating without cause), slander (for statements made about Fisher during and after the meeting), conversion (for withholding fees from Fisher), and other causes of action.

Pertinent to his breach of contract claim, Fisher contended that: (1) the employment agreement overcame the presumption that he was an at-will employee; (2) he could only be terminated for "cause" as defined in the agreement; (3) nothing in the agreement required him to accept any of Pinnacle's five demands for continuing his employment; and thus (4) Pinnacle breached the agreement by constructively terminating him without cause at the meeting. There appears to be no dispute as to Fisher's first two contentions; however, Pinnacle disputed the latter two contentions. Specifically, Pinnacle claimed that Fisher's actions before and during the meeting constituted "cause" to terminate him under the agreement, and that it thereafter terminated Fisher for cause pursuant to the agreement after Fisher refused Pinnacle's demands.

The trial court granted Fisher's traditional motion for partial summary judgment in part and denied it in part. The exact text of the trial court's order will be reviewed in more detail herein, but by way of summary the trial court held that Fisher proved as a matter of law he was not terminated for cause based on any of the "for cause" provisions in the agreement, save three. Those three provisions, set

forth in subsection (iv)[1] and subsection (viii)[1] and [2], defined "cause" as:

(iv) Physician's [1] failure to perform the duties required hereunder ...;

(viii) Physician's engaging in behavior or activities which [1] result in damage to the Association's reputation and/or [2] disrupt, undermine or threaten to disrupt or undermine the operations or cohesiveness of the Association or the Physician's Division....

(Brackets added.) [2] The trial court also granted Pinnacle's motion for summary judgment on all of Fisher's causes of action against it except breach of contract, conversion, and slander.

The case then proceeded to jury trial.[3] As to Fisher's breach of contract claim, the jury found that Pinnacle did not terminate Fisher for cause under the three remaining "for cause" grounds under the contract.[4] The jury also found Fisher did not repudiate the employment agreement. Based on these answers, the jury awarded Fisher damages of $900,000 in past lost earnings and $5 million in future lost earnings on his breach of contract claim. The jury also found in Fisher's favor on his claims for conversion and slander and awarded damages of $36,000 and $200,000 (respectively) for these claims.

Based on the jury's findings, the trial court signed a judgment in favor of Fisher and against Pinnacle in the amount of $8,597,508.27, including attorney's fees and prejudgment interest. Pinnacle appealed, asserting three issues. None of these issues relate to the computation of the damage amounts.

## II. BREACH OF CONTRACT

A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769, 770 (Tex. App.-Dallas 2005, pet. denied). A defendant's improper termination of a contract is a breach of the contract as a matter of law. *Gunter Hotel of San Antonio Inc. v. Buck*, 775 S.W.2d 689, 697 (Tex.App.-San Antonio 1989, writ denied); *Incorporated Carriers, Ltd. v. Crocker*, 639 S.W.2d 338, 340 (Tex.App.-Texarkana 1982, no writ); *Howell v. Kelly*, 534 S.W.2d 737, 740 (Tex. Civ.App.-Houston [1st Dist.] 1976, no writ). When an employment agreement requires cause to terminate an employee, the burden of proof for establishing cause rests upon the employer. *Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 543 (Tex.App.-Dallas 1995, writ denied).

As described above, the trial court granted partial summary judgment for

---

2. *See supra* note 1.

3. Because of the nature of Pinnacle's complaints on appeal, we need not recount in detail the evidence relating to Pinnacle's liability (except with respect to whether it terminated Fisher without cause) or the evidence relating to Fisher's damages.

4. Specifically, the jury answered "no" to the following question:

Do you find, by a preponderance of the evidence, that [Pinnacle] terminated [Fisher] for "Cause" under the terms of their Employment Agreement?

"Cause" under the terms of their employment contract means:
a.) A failure to perform the duties required under the Employment Agreement and/or
b.) Engaging in behavior or activities which resulted in damage to [Pinnacle's] reputation and/or disrupted, undermined or threatened to disrupt or undermine the operations or cohesiveness of [Pinnacle] or the Dallas Division of [Pinnacle].

You are instructed that, as a matter of law, [Fisher's] mere failure to voluntarily submit to [Pinnacle's] peer review process is not "Cause" under the terms of the Employment Agreement.

Fisher, concluding as a matter of law that Pinnacle did not have cause to terminate Fisher based on thirteen of the sixteen "for cause" grounds set forth in the contract. The jury also held in favor of Fisher, finding as a matter of fact that Pinnacle did not terminate Fisher for cause based on the remaining three "for cause" grounds. The trial court's partial summary judgment as to the thirteen "for cause" grounds, and the manner in which the court tried the three remaining "for cause" grounds, give rise (respectively) to Pinnacle's first and second issues on appeal.

## A. Partial Summary Judgment

In its first issue, Pinnacle contends the trial court erred in granting partial summary judgment.

### 1. Burden of Proof

■ A party seeking to recover upon a claim may move for summary judgment in his favor upon all or any part thereof. Tex.R. Civ. P. 166a(a). When the plaintiff moves for summary judgment on a claim for relief, he must affirmatively demonstrate by summary judgment evidence that there is no genuine issue of material fact concerning each element of his claim, including the existence of damages or loss. See Rhone–Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.1999); Green v. Unauthorized Practice of Law Comm., 883 S.W.2d 293, 297 (Tex.App.-Dallas 1994, no writ). See also Tex.R. Civ. P. 166a(a) (summary judgment may be rendered on issue of liability alone, although there is genuine issue as to amount of damages). The plaintiff meets this burden if he produces evidence that would be sufficient to support an instructed verdict at trial. See Ortega–Carter v. Am. Int'l Adjustment Co., 834 S.W.2d 439, 441 (Tex.App.-Dallas 1992, writ denied).

Once the movant with the burden of proof has established the right to summary judgment on the issues presented, the nonmovant's response should present to the trial court a genuine issue of material fact that would preclude summary judgment. See Abdel–Fattah v. Pepsico, Inc., 948 S.W.2d 381, 383 (Tex.App.-Houston [14th Dist.] 1997, no writ). If a case is not fully adjudicated on a motion for summary judgment, the trial court is authorized to render partial summary judgment, making "an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just." See Tex.R. Civ. P. 166a(e).

### 2. Standard of Review

■ We review a traditional summary judgment de novo. Roehrs v. FSI Holdings, Inc., 246 S.W.3d 796, 805 (Tex.App.-Dallas 2008, pet. denied). We consider the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. W. Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex.2005). Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. See Tex.R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979).

### 3. Analysis

Pinnacle makes several arguments under its first issue. It argues: (a) Fisher's motion did not address each of the "for cause" grounds for termination set forth in the agreement; (b) the text of the trial court's order shows that the trial court erred because it treated Fisher's traditional motion for partial summary judgment as a "no evidence" motion attacking each ground for termination "for cause" under the agreement; (c) because the trial court ruled against Fisher with respect to several of the "for cause" grounds for termi-

nation, it should have denied Fisher's motion in its entirety and thus it erred in "ruling on specific grounds piecemeal"; and (d) the trial court erred in granting summary judgment because Pinnacle raised a fact issue regarding termination for cause on several grounds.

### (a) Scope of Fisher's Motion

■ Pinnacle argues that Fisher's motion did not address each of the "for cause" grounds for termination set forth in the agreement. We disagree. In his motion, Fisher asserted that the fourteen subsections set out "separate actions that would constitute 'cause' for terminating" and asserted that "[n]one of the grounds could be relied upon to terminate [him] under the agreement...." He asserted that, under the terms of the employment agreement, his refusal to submit to Pinnacle's five

conditions was not "cause" for termination. He asserted that eight of the "for cause" grounds "were not even alleged" by Pinnacle against him. He argued that the remaining grounds could not be triggered by mere allegations, and they all required that he be found to have committed some act that would trigger termination for cause.[5] As evidence, Fisher's motion relied, in part, on: the transcription of the recording of the January 22 meeting; a copy of the agreement, containing all fourteen subsections stating all sixteen grounds for termination for cause; and an affidavit of Fisher stating that he made an audio recording of the January 22 meeting, it truly and accurately recorded the events at the meeting, and the transcription attached to the motion as Exhibit A was a "true and accurate transcript of the audio recording."[6] We thus conclude Fisher's

**5.** The only subsection not expressly referenced by number in the motion is subsection (x), which defined "cause" to include the physician's "engaging in fraud or embezzlement." *See infra* note 6. However, this subsection was encompassed within both of the two categories discussed above: it was not alleged by Pinnacle, and it required Fisher be found to have committed (not just accused of committing) some act of fraud or embezzlement. Thus, we conclude Fisher's motion also addressed and encompassed termination under subsection (x).

**6.** The subsections specifying cause for termination are quoted below:

 (i) The suspension, revocation, surrender, or cancellation of Physician's right to practice medicine in Texas or to prescribe controlled substances;

 (ii) Absent a prior agreement between the parties, the revocation, reduction or surrender of Physician's membership on the medical staff of any location listed on Exhibit A or any adverse action taken against Physician's clinical privileges at any such location or the failure of Physician to attain the necessary clinical privileges to provide Anesthesiology Services at any such location within a reasonable

time of applying for such clinical privileges;

 (iii) The imposition of any restrictions or limitations by any governmental authority having jurisdiction over Physician to such an extent that he cannot engage in the professional practice on the basis for which he was employed;

 (iv) Physician's [1] failure to perform the duties required hereunder or [2] failure or refusal to comply with the policies, standards and regulations of the Association which from time to time may be established, as determined in the Board of Directors' sole discretion;

 (v) Physician is found guilty of unprofessional or unethical conduct by any board, institution, organization or professional society having any privilege or right to pass on the conduct of Physician;

 (vi) Physician's conviction in a court of competent jurisdiction of any felony offense or any misdemeanor offense involving moral turpitude;

 (vii) Physician materially breaches this Agreement;

 (viii) Physician's engaging in behavior or activities which [1] result in damage to the Association's reputation and/or [2] disrupt, undermine or threaten to disrupt

motion addressed all sixteen bases for termination "for cause" under the agreement.

### (b) Nature of Fisher's Motion and Trial Court's Order

Pinnacle also argues that the text of the trial court's order shows it treated Fisher's traditional motion for partial summary judgment as a "no evidence" motion attacking each ground for termination "for cause" under the agreement, and thus erred by in effect requiring Pinnacle to marshal its proof of cause for each of the contractual grounds for termination. The basis for Pinnacle's argument is the trial court's use of the phrase "no evidence" in the second and third numbered paragraphs of the order, which we quote below. The order states that the trial court is granting the motion in part and denying it in part "as follows:"

> 1. [Fisher's] motion for summary judgment that [Pinnacle] breached the [employment agreement] is GRANTED IN PART in so far that *there is conclusive summary judgment evidence* establishing a prima facie case of breach by [Pinnacle] *subject to* the rulings in paragraphs 2–5 below.

> or undermine the operations or cohesiveness of the Association or the Physician's Division;
> (ix) Physician's breach of any material fiduciary duty to the Association;
> (x) Physician's engaging in fraud or embezzlement;
> (xi) *Physician's loss of malpractice insurance as a result of any action or inaction of Physician which cannot be timely replaced through diligent efforts;*
> (xii) A recommendation by the Quality Assurance and Peer Review Committee (or the Board of Directors, if such committee has not been created) to terminate Physician's employment with the Association is made after an investigation regarding the quality of patient care rendered by Physician is concluded;

> 2. [Fisher's] motion for summary judgment that there is *no evidence* that [Fisher] breached Section 4.2(a)(xii) or was terminated for cause pursuant to Section 4.2(a)(xii) of the [employment agreement] is GRANTED and the Court also finds as a matter of law there was no recommendation made pursuant to this provision of the Agreement to terminate [Fisher's] employment pursuant to Section 4.2(a)(xii).

> 3. [Fisher's] motion for summary judgment that there is *no evidence* that [Fisher] breached Section 4.2(a)(iv) of the [employment agreement] that reads physician's "failure or refusal to comply with the policies, standards and regulations of the Association with from time to time may be established, as determined in the Board of Directors' sole discretion" and there is *no evidence* that [Fisher] was terminated for cause pursuant to Section 4.2(a)(iv) of the [employment agreement] that reads physician's "failure or refusal to comply with the policies, standards and regulations of the Association with from time to time may be established, as determined in the Board of Directors' sole discretion" is GRANTED.

> (xiii) Physician's employment status with the Association is modified by the Board of Directors of the Association and Physician does not, if required by the Board of Directors, transfer to Association the required portion of his shares in accordance with the Buy–Sell Agreement; or
> (xiv) Physician's failure to pay his pro-rata portion of indemnification amounts to any proper indemnitee pursuant to Article XIV of that certain Asset Exchange Agreement and Plan of Reorganization between the Association, DFW Anesthesia Associates, P.A. ("DFW") and North Texas Anesthesia Consultants, P.A. ("NTAC").

(Brackets added.)

4. [Fisher's] motion for summary judgment that Fisher did not breach Section 4.2(a)(iv) of the [employment agreement] for the "failure to perform the duties required hereunder" and was not terminated for cause pursuant to Section 4.2(a)(iv) of the [employment agreement] that reads physician's "failure to perform the duties required hereunder" is DENIED.

5. [Fisher's] motion for summary judgment that [Fisher] did not breach Section 4.2(a)(viii) and was not terminated for cause pursuant to Section 4.2(a)(viii) is DENIED.

All other relief not expressly granted herein is DENIED. . . .

(Emphasis added in italics.)

We agree Fisher's motion for partial summary judgment was a traditional motion as to Pinnacle's liability for breach of the agreement; thus, Fisher had the burden of proving he was entitled to summary judgment with respect to each of the "for cause" grounds for termination set forth in the agreement.

Although the language of the trial court's order is not a model of clarity, we conclude that paragraph 1 of the order, by granting Fisher's motion "subject to the rulings in paragraphs 2–5 below," is effective to grant Fisher a traditional summary judgment negating all sixteen grounds for termination for cause, "subject to" the additional specified rulings. Two of those rulings, in paragraphs 4 and 5 of the order, deny Fisher summary judgment as to three of the termination-for-cause grounds (namely, subsections (iv)[1] and (viii)[1] and [2] ); thus, they necessarily contravene paragraph 1 and are effective to exclude from paragraph 1's grant of traditional summary judgment the issues of whether Fisher was terminated pursuant to those subsections.

That brings us to the meaning of paragraphs 2 and 3, which purport to grant a "no evidence" summary judgment with respect to the "for cause" grounds set forth in subsections (xii) and (iv)[2] (respectively). Unlike paragraphs 4 and 5 of the order, however, the holdings in paragraphs 2 and 3 do not contravene paragraph 1's grant of traditional summary judgment; i.e., they do not remove issues relating to termination under subsections (xii) and (iv)[2] from the scope of the traditional summary judgment granted in paragraph 1. As worded by the trial court, paragraphs 2 and 3 constitute additional—albeit erroneous—"no evidence" summary judgment rulings as to whether Fisher was terminated pursuant to subsections (xii) and (iv)[2]. Unless the trial court erred in granting a traditional summary judgment on those subsections in paragraph 1 of the order, we cannot conclude that the additional holdings in paragraphs 2 and 3 resulted in the entry of an improper judgment. See TEX.R.APP. P. 44.1(a) (error is reversible if it probably caused rendition of improper judgment or probably prevented appellant from properly presenting case to court of appeals).

In addition, Pinnacle argues the trial court's order "creates ambiguity" as to which grounds for cause the order covers. Fisher disagrees, arguing among other things that Pinnacle waived this complaint by approving the order as to form. Assuming without deciding that Pinnacle has not waived this complaint, we still disagree. As noted above, paragraph 1 effectively granted Fisher a traditional summary judgment negating the all "for cause" grounds for termination, subject to the rulings in paragraphs 2 through 5. Paragraphs 4 and 5 negate and limit that traditional summary judgment to exclude the issues of whether Fisher was terminated for cause pursuant to subsections (iv)[1] and (viii)[1] and [2], and those issues were

thereafter tried to a jury. Further, although paragraphs 2 and 3 erroneously reference a no-evidence motion, they do not negate or limit the effect of paragraph 1. We conclude no ambiguity exists such as would require reversal.

### (c) "Piecemeal" Nature of Rulings

Pinnacle argues that, because the trial court found a fact issue existed as to whether Pinnacle terminated Fisher for cause based on three of the sixteen grounds for termination set forth in the agreement (subsections (iv)[1] and (viii)[1] and [2] ), the trial court should have denied Fisher's motion in toto, and thus it erred in "ruling on specific grounds piecemeal." Again, Fisher replies that Pinnacle waived this complaint by approving the order as to form.

■ Assuming Pinnacle did not waive this complaint, we conclude rule of civil procedure 166a(e) is dispositive—it permits partial summary judgment, directing the trial court to make "an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just." *See* Tex.R. Civ. P. 166a(e). Thus, we conclude the trial court did not err by granting partial summary judgment on some of the grounds for termination, reserving others for trial.

### (d) Issue of Fact as to Other "For Cause" Grounds

As noted above, Fisher's summary judgment motion asserted that he was not terminated "for cause" as defined in the employment agreement. He asserted that nothing in the agreement required him to accept any of the conditions for continued employment presented to him at the January 22 meeting, and his refusal to accept those conditions did not fit within any of the enumerated termination-for-cause

grounds. In its response, Pinnacle contended that Fisher's failure to agree to undergo Pinnacle's peer review process justified his termination under subsection (iv)[1] and [2], subsection (viii)[1] and [2], and subsection (xii). The trial court granted partial summary judgment, finding that Fisher proved as a matter of law he was not terminated for cause under any of the provisions of the agreement except for three (subsection (iv)[1] and subsection (viii)[1] and [2] ), which were later tried by a jury. On appeal, Pinnacle asserts the trial court erred in granting summary judgment disposing of the issue of termination because it raised a fact issue under six for-cause provisions.

First, we consider Pinnacle's assertion that it raised a fact issue as to Fisher's termination under subsection (iv)[2]—permitting termination for "failure or refusal to comply with the policies, standards and regulations of the Association which from time to time may be established, as determined in the Board of Directors' sole discretion"—and, therefore, the trial court erred in granting summary judgment disposing of the issue of termination under that subsection. In support of this assertion, Pinnacle makes several arguments.

■ Pinnacle argues Fisher's refusal to agree to undergo peer review constituted evidence of a violation of Pinnacle's policies, standards, or regulations. However, no provision of the employment agreement requires a Pinnacle physician to agree to submit to Pinnacle's peer review process upon request. Neither did Pinnacle point to evidence that Pinnacle's directors had established a policy, standard, or regulation imposing such a requirement. Further, there was evidence that a peer review referral could be made without a physician's agreement. Specifically, Hank Duffy, Pinnacle's manager who began the January 22 meeting, stated there that:

The Dallas physician shareholders are being asked to refer to the Pinnacle quality improvement in Peer Review Committee certain allegations made regarding Dr. Fisher's clinical practice. Should the Dallas Division shareholders believe that there is reason to be concerned about any clinical practice, there is a professional obligation to address the behavior from the peer review process. It is the shareholder's primary obligation. . . . It is the question of [sic] is there a sense among the shareholders that the allegations are sufficient that they be sent to the peer review process because it is protected. . . .

Later, Duffy read specific allegations regarding clinical practices and stated:

Those are the six clinical allegations and they fall into uh, what we're calling the Peer Review group. If your colleagues hypothetically believe that those allegations probably aren't true, but there are enough of them that they should be cautious, we are telling them that they should refer this to the peer review process to protect everybody including yourself.

In a deposition, Fisher stated he heard one of the Pinnacle doctors "was going around soliciting votes from the doctors to put me in peer review . . . ." Accordingly, we reject Pinnacle's argument that Fisher's refusal to agree to undergo peer review constituted evidence of a violation of Pinnacle's policies, standards, or regulations.

Pinnacle also directs our attention to its "Quality Management Policies and Procedures" which concern "Handling Suspected Impaired Practitioners." This document provides that a suspected impaired physician should be reported to the chairperson of Pinnacle's Quality Improvement Committee, who then names a Physician Health Committee to investigate the report and make a recommendation as to disciplinary action to the Board of Directors. This document was attached as an exhibit to Fisher's reply to Pinnacles's response. However, in its response, Pinnacle did not bring this document to the trial court's attention, although it pointed to an allegation of "using alcohol while on Obstetrics service." But Pinnacle made no argument that Fisher was an impaired physician or that anyone had invoked the procedures provided by the "Quality Management Policies and Procedures" with respect to Fisher, or that Fisher violated the terms of those policies, standards, or requirements by refusing to agree to submit to peer review. Because this argument was not made in Pinnacle's response as an issue expressly precluding summary judgment, Pinnacle cannot raise it on appeal as a reason to reverse the summary judgment. *See City of Houston,* 589 S.W.2d at 677.

Pinnacle also argues at least one Dallas Division doctor had been required to undergo peer review and this was some evidence of an informal policy requiring Pinnacle physicians to submit to peer review upon request. However, this argument was not made in Pinnacle's response as an issue expressly precluding summary judgment. Thus, Pinnacle cannot raise it on appeal as a reason to reverse the summary judgment. *See id.*

Pinnacle also makes the following argument:

The question before the court on summary judgment was not whether Fisher's noncompliance with Pinnacle's policies, standards, or regulations had been established, or even whether there was a fact issue concerning whether it had been established, but whether there was a fact issue that it could have been established in the sole discretion of the Pinnacle board, which had not yet acted

at the time of the January 22, 2004, meeting.

This argument presents nothing new, absent some evidence that, on January 22, 2004, Pinnacle had an *existing* policy, standard, or regulation requiring Pinnacle physicians to submit voluntarily to peer review. And there is no such evidence here.

Pinnacle also argues that, apart from Fisher's refusal to submit to peer review, many of the administrative allegations related specifically to Fisher's failure to comply with Pinnacle's policies, procedures, and directives, such as being on time for cases and filling out charts. In the factual background of its response to Fisher's motion for summary judgment, Pinnacle outlined administrative complaints regarding Fisher's failure to adhere to its policies, procedures, and directives. However, Pinnacle made no argument in its response that Fisher was terminated for failing to comply with policies, procedures, and directives governing these administrative allegations. Because this argument was not made in Pinnacle's response as an issue expressly precluding summary judgment, Pinnacle cannot raise it on appeal as a reason to reverse the summary judgment. *See id.*

Next, Pinnacle asserts the trial court erred in granting summary judgment disposing of the issue of termination under subsection (viii)[1] and [2]—permitting termination for "engaging in behavior or activities which [1] result in damage to the Association's reputation and/or [2] disrupt, undermine or threaten to disrupt or undermine the operations or cohesiveness of the Association or the Physician's Division"— because it raised a fact issue regarding termination for cause under these subsections. But the trial court denied Fisher's motion for summary judgment on subsection (viii)[1] and [2], as noted above. We need not address these specific arguments

in the context of summary judgment because the denial of Fisher's motion for summary judgment for cause under subsection (viii)[1] and [2] did not result in reversible error. *See* Tex.R.App. P. 44.1. *See also Reese v. Duncan,* 80 S.W.3d 650, 665 (Tex.App.-Dallas 2002, pet. denied) ("If the trial court denies a motion for summary judgment and the case is tried on its merits, the order denying the summary judgment is not reviewable on appeal.").

We reach the same conclusion as to Pinnacle's argument that the trial court erred in granting summary judgment disposing of the issue of termination under subsection (iv)[1], which permits termination for a physician's "failure to perform the duties required" under the employment agreement, because it raised a fact issue regarding termination for cause under this subsection. The trial court denied Fisher's motion for summary judgment on subsection (iv)[1], as noted above. We need not address this specific argument in the context of summary judgment because the denial of Fisher's motion for summary judgment for cause under subsection (iv)[1] did not result in reversible error. *See* Tex.R.App. P. 44.1. *See also Reese,* 80 S.W.3d at 665.

Lastly, we consider Pinnacle's argument that the trial court erred in granting summary judgment disposing of the issue of termination because evidence of Fisher's derogatory statements made to outsiders raised a fact issue of termination for cause under section (ix), which provides for termination-for-cause for a physician's "breach of any material fiduciary duty to the Association." This argument was not made in Pinnacle's response to the motion for summary judgment as an issue expressly precluding summary judgment. Thus, Pinnacle cannot raise it on appeal as reasons to reverse the summary judgment. *See City of Houston,* 589 S.W.2d at 677.

We reach the same conclusion regarding Pinnacle's argument that the trial court erred in granting summary judgment disposing of the issue of termination because it raised an issue of fact pursuant to subsection (vii), which provides termination-for-cause when a physician "materially breaches" the employment agreement. Pinnacle argues specifically that Fisher breached section 2.1(c), (d), and (f) of the employment agreement, which required Fisher to promote Pinnacle's professional practice, attend to Pinnacle's administrative duties, and follow professional standards of quality. However, this argument was not made in Pinnacle's response to the motion for summary judgment as an issue expressly precluding summary judgment. Thus, Pinnacle cannot raise it on appeal as reasons to reverse the summary judgment. *See id.*

Having rejected Pinnacle's arguments directed to the propriety of the summary judgment, we resolve Pinnacle's first issue against it.

## B. Jury Trial

The jury was asked to consider three grounds for termination for cause: Fisher's failure to perform the duties required under the employment agreement (subsection (iv)[1] ), or his engaging in behavior or activities which resulted in damage to Pinnacle' reputation (subsection (viii)[1] ) or disrupted, undermined, or threatened to disrupt or undermine Pinnacle's or the Dallas Division's operation or cohesiveness (subsection (viii)[2] ). The jury found against Pinnacle. In its second issue, Pinnacle argues the trial court erred at trial by "precluding in its entirety Pinnacle's defense that Fisher's refusal to submit to peer review constituted cause for termination under the grounds submitted to the jury." Pinnacle asserts the trial court erred by: (1) limiting its proof and argu-

ment on this issue; (2) granting motion for directed verdict for Fisher on this point; and (3) instructing the jury that, as a matter of law, Fisher's "mere failure to voluntarily submit to [Pinnacle]'s peer review process is not 'Cause' under the terms of their Employment Agreement."

### 1. Limiting Proof

■ We review a trial court's evidentiary rulings for abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 906 (Tex.2000). Unless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Id.*

■ After the jury returned its verdict, Pinnacle argued that it "was prohibited at trial from introducing evidence and arguing to the jury that Fisher's failure to submit to Pinnacle's peer review process was a basis for his termination and/or constituted termination for cause." Pinnacle argued that Fisher agreed Pinnacle could offer this evidence "later," and Fisher did not object. Pinnacle then described the testimony of six witnesses as an offer of proof. However, it was undisputed that Fisher was not terminated solely because he refused to submit to Pinnacle's peer review. First, Dr. Michael Hicks, Pinnacle's president, was asked, "Was Dr. Fisher terminated solely because of a refusal or statement that he would not participate in peer review?" Hicks replied, "No, not at all." Dr. Alan Frankfurt, a Pinnacle shareholder who attended the January 22 meeting, was asked, "Did you terminate Neal Fisher's employment from Pinnacle solely because he refused to go to peer review?" Frankfurt replied, "No. He had to abide by the other parameters as well." None of the testimony in the offer of proof related to the actual reason Fisher was terminated, only that he could have been terminated for such failure. Because such

testimony was irrelevant to the issue of termination for cause, any error in excluding this testimony did not result in reversible error. *See* Tex.R.App. P. 44.1; *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 906.

### 2. Directing a Verdict

A directed verdict is proper under rule of civil procedure 268, in part, when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law. Tex.R. Civ. P. 268. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex.2004). In reviewing the granting of a directed verdict, we must determine if there is more than a scintilla of evidence to raise a fact issue on the material question presented. *See Coastal Transp. Co.*, 136 S.W.3d at 233. We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Id.* at 234. If the evidence supporting a finding on the issue "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," it constitutes more than a scintilla of evidence and the case must be reversed and remanded for a jury determination. *See id.* (citation omitted).

We consider Pinnacle's arguments in light of the trial court's directed verdict on the issue that the failure to agree to submit voluntarily to peer review was not just cause for termination.

Section 1.1 of the employment agreement defines "Anesthesiology Services" required of Pinnacle physicians as "the services of a specialist in the practice of anesthesiology" and lists six specific services clearly related to delivering medical care to patients. Following that list, the employment agreement states, "Physician shall render Anesthesiology Services in accordance with the Association's policies and procedures and *shall perform any other services that are assigned or requested from time to time by the Association and the Physician's Division.*" (Emphasis added.) Referring to subsection (iv)[1], Pinnacle argues on appeal that submission to peer review comes within the "non-anesthesiological services" referred to in the italicized language and that "the refusal [to submit to peer review] could have been construed by a reasonable juror as a failure by Fisher to perform the duties required of him under the Agreement." However, even if this were true, the evidence was undisputed that Fisher was not fired solely because he refused to submit to peer review—he was fired for refusing to submit to all five conditions.[7]

Pinnacle's arguments as to subsection (viii)[1] and [2] rest on speculation as to Fisher's motive for such refusal, the possible reaction of other doctors to such refusal, and the possible future "effect" of such refusal, including "whether it was safe to schedule Fisher for anesthesiological procedures." Pinnacle argues, "These lingering questions could not help but disrupt and undermine operations and cohesiveness." There was no evidence presented as to whether such "lingering questions" had any factual basis. The only record references in Pinnacle's brief are to the fact of Fisher's refusal at the meeting. Such speculation and surmise do not constitute more than a scintilla of evidence. *See Coastal Transp. Co.*, 136 S.W.3d at 233–34. Because there is no evidence rais-

---

7. Moreover, we decline to hold that, in the context of section 1.1 of the employment agreement, the provision requiring Fisher to provide "any other services" could reasonably be construed to include agreeing to submit to peer review.

ing a fact issue on the question of whether Fisher's failure to agree to submit voluntarily to peer review was just cause for termination under subsections (iv)[1] or (viii)[1] and [2], we conclude the trial court did not err in granting a directed verdict on this issue. *See id.*

Having rejected Pinnacle's arguments, we conclude the trial court did not err in directing a verdict on the issue that the failure to agree to submit voluntarily to peer review was not just cause for termination. *See id.*

### 3. Instructing the Jury

 The trial court is required to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." *Sterling Trust Co. v. Adderley,* 168 S.W.3d 835, 842–43 (Tex. 2005) (quoting Tex.R. Civ. P. 277). We review the trial courts submission of instructions and jury questions under an abuse of discretion standard. *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 824 (Tex.App.-Dallas 2003, pet. denied). To determine whether an alleged error in the jury charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Id.*

 At the charge conference, although Pinnacle initially objected to submission of the instruction, it then agreed to include "mere" in the instruction. By such agreement Pinnacle abandoned its objection and waived its argument on appeal. *See* Tex.R.App. P. 33.1(a). Even if Pinnacle had not abandoned this objection, as noted above, two Pinnacle witnesses testified that Fisher was not terminated solely because he refused to participate in peer review. Because the instruction enabled the jury to render a verdict, we discern no abuse of discretion in the submission of this jury instruction. *See Sterling Trust*

*Co.,* 168 S.W.3d at 842–43; *Barnett,* 123 S.W.3d at 824.

### 4. Conclusion

Having rejected Pinnacle's arguments as to the trial rulings, we resolve Pinnacle's second issue against it.

### III. CONVERSION

In its third issue, Pinnacle contends Fisher had no conversion claim because that claim was based on Pinnacle's deducting its attorney's fees from his final salary payment, but such money was not "a specific tangible asset" required to prove a tort for conversion of money. The record shows that Pinnacle's only objection to the originally proposed submission of Question 4 was the inclusion of the word "wrongfully" in the question. In response to Pinnacle's objection, the trial court deleted the word "wrongfully," thus effectively sustaining Pinnacle's sole objection. Pinnacle had no other objection to Question 4, which asked the jury, "Did [Pinnacle] convert Neal Fisher's property?" and listed the elements of a conversion claim. We conclude Pinnacle's argument on appeal was not made in the trial court. *See* Tex. R.App. P. 33.1.

In addition, in closing argument, Pinnacle's counsel said,

> I'm going to tell you, we are not going to fuss about [the conversion award]. If you think Dr. Fisher deserves that money write "Yes" in there and we'll write that check before they get out of the courtroom. . . . You decide. That's not a biggie. If you think he deserves that, give it to him.

Based on Pinnacle's lack of further objection before the trial court and its argument before the jury, we conclude Pinnacle did not preserve for review its conversion argument. *See Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982) (per curiam)

("The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that one should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time."). We resolve Pinnacle's third issue against it.

## IV. CONCLUSION

Having resolved Pinnacle's three issues against it, we affirm the trial court's judgment.